J-S41034-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DENNIS L. SHIRES, II, | : | |
| | : | |
| Appellant | : | No. 233 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 6, 2017
in the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0002155-1998

BEFORE:   LAZARUS, J., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                    **FILED JUNE 05, 2020**

Dennis L. Shires, II (Appellant), appeals *nunc pro tunc* from his July 6, 2017 judgment of sentence, which the trial court imposed after revoking Appellant's probation.  Appellant's counsel has filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We deny counsel's petition to withdraw, deny Appellant's applications for appointment of new counsel and publication,[1] and direct counsel to file an advocate's brief.

We refer the parties to our September 24, 2019 memorandum for a full recounting of the facts and prior procedural history.  ***Commonwealth v.***

_____

[1] These applications are embedded within Appellant's *pro se* response to counsel's ***Anders*** brief.

*Retired Senior Judge assigned to the Superior Court.

*Shires*, ___ A.3d ___, 2019 WL 4668094 (Pa. Super. 2019) (unpublished memorandum). We set forth the pertinent history here, which includes those portions that now have been included in the certified record following remand.

In 2002, Appellant pleaded guilty to rape, involuntary deviate sexual intercourse (IDSI), and aggravated indecent assault in connection with a 1998 incident in which Appellant brandished a knife and sexually assaulted a 17-year-old clerk in the adult video room of a video store. On October 23, 2002, in accordance with the plea agreement, he was sentenced to 5½ to 11 years of incarceration for rape, followed by 3½ to 7 years of incarceration for aggravated indecent assault, followed by "supervision by the State Board of Probation and Parole [(Board)]" for a period of 20 years for IDSI.[2] Order, 10/29/2002, at 1-2. The trial court made Appellant's payment of costs, fines, and restitution "a condition of intermediate punishment, probation[,] or parole supervision." *Id.* The order does not reference any other conditions of Appellant's probation. No appeal from this judgment of sentence was filed.

On February 8, 2010, the Board notified Appellant that the Board had accepted him for supervision as a "special probation or parole case,"

_____

[2] The transcript from Appellant's sentencing hearing does not appear in the certified record. This was one of the items this Court directed counsel to obtain on remand. Counsel has represented to this Court that she attempted to obtain this transcript, but it was unavailable due to its age.

effective November 22, 2016. Board Acceptance for State Supervision, 2/8/2010 (filed 10/23/2019).[3] The Board provided Appellant with a document entitled "Conditions Governing Special Probation/Parole" that set forth eight conditions of supervision. Board Conditions Governing Special Probation/Parole, 2/9/2010 (filed 10/23/2019). Appellant acknowledged his understanding of the conditions and agreed to follow them on February 9, 2010, as evidenced by his signature. *See id.*

On May 20, 2016, Appellant signed a document from the Board entitled "Optional Special Conditions for Sex Offenders." Board Optional Special Conditions for Sex Offenders, 5/20/2016 (filed 10/23/2019). This document set forth six conditions of supervision; Appellant initialed next to each condition and indicated that he understood and agreed to abide by the conditions. *See id.*

On May 31, 2016, Appellant signed a document from the Board entitled "Standard Special Conditions for Sex Offenders." Board Standard Special Conditions for Sex Offenders, 5/31/2016 (filed 10/23/2019). This document set forth 14 conditions of supervision, and again Appellant initialed next to each condition and indicated he understood and agreed to abide by the conditions. *See id.*

---

[3] We have indicated the documents added to the certified record on remand by noting the 2019 filing date.

At some point that is not clear from the certified record, Appellant was granted parole. He later completed his parole and began the special probationary tail portion of his sentence. According to the February 8, 2010 Board Acceptance for State Supervision form, probation was scheduled to begin on November 22, 2016, but the record, the trial court, and the parties do not provide clarity as to whether the start of his probation occurred as scheduled.

On December 28, 2016, an order was entered on the docket dated December 15, 2016.[4] The order stated that "as additional conditions of [Appellant's] special probation, [Appellant] must comply with the conditions governing probation and parole, the standard special conditions for sex offenders, and any supplemental standard special conditions of supervision." Trial Court Order, 12/28/2016, at 1. A notation on the order indicates that it was served on the Public Defenders' Office, and not Appellant directly. No transcript or pleading corresponding to this order appears in the record, making it unclear why it was entered.

On February 13, 2017, the Board provided "Notice of Charges and Hearing Special Probation/Parole" to Appellant, notifying him that it was charging him with three violations of his special probation. The Board first alleged that Appellant admitted to his probation officer that he had picked up

_____

[4] Prior to this order, the last docket activity occurred back in 2002 around the time of Appellant's sentencing.

16-year-old and 18-year-old females at 3:30 a.m. on February 6, 2017, with the intention to ask them to expose their breasts to him. According to the Board, this act violated condition number one in the Optional Special Conditions for Sex Offenders.[5]

The Board next alleged that Appellant was discharged from Triad Treatment Specialists because Appellant had accessed or possessed pornography, had self-reported persistent reliance on or demonstration of deviant sexual behavior, and had failed to use therapy to prevent sexually abusive behavior or risk factors related to the cycle of abuse. The Board averred that Appellant's discharge violated condition number one of the Standard Conditions for Sex Offenders, which was to complete successfully all treatment recommended following a sex offender evaluation from a sex offender treatment provider.

Finally, the Board alleged that Appellant admitted staying over at his girlfriend's house multiple times in the month of January 2017 despite knowing it was an unapproved residence. The Board stated that this violated condition number 11 of the Standard Conditions for Sex Offenders.

_____

[5] Before each cite to the Optional Special Conditions for Sex Offenders or the Standard Conditions for Sex Offenders, the notice also listed "Condition #8: You shall comply with the following special conditions imposed by the court," but did not specify where "Condition #8" appears. Notice of Charges and Hearing Special Probation/Parole, 2/13/2017 (filed 10/23/2019) (unnecessary capitalization removed).

Following a preliminary *Gagnon I* hearing[6] on March 22, 2017, the trial court found probable cause to believe that Appellant violated the conditions of his special probation.  Order, 3/9/2017, at 1.  The trial court conducted the *Gagnon II* probation violation hearing on April 19, 2017.  Based upon a counseled admission by Appellant, the trial court found that the allegations in the Commonwealth's petition occurred as alleged.  Order, 4/25/2017, at 1.  Notwithstanding his admission, Appellant denied that the acts violated any terms of his probation.  N.T., 4/19/2017, at 5-6, 9.  According to Appellant, the acts may have violated terms of his parole, but after his parole expired and his consecutive probationary sentence began, he was no longer subject to the special conditions.  *Id.*  Appellant took this position because he claims he did not sign any documents with the conditions once he began his probation.[7]  *Id.*

The trial court rejected Appellant's argument, determining that the special "conditions survived the change from parole status to probation

---

[6] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *see also Commonwealth v. Ferguson*, 761 A.2d 613 (Pa. Super. 2000) (explaining when probationer is detained based on an alleged probation violation, due process requires a *Gagnon I* hearing to determine whether there is probable cause that probationer committed violation, followed by a second more comprehensive *Gagnon II* hearing wherein trial court determines whether to revoke probationer's probation).

[7] Deciphering Appellant's argument with precision is difficult because the record is not clear as to whether he began his probation before or after signing the Optional Special Conditions for Sex Offenders and the Standard Special Conditions for Sex Offenders in May 2016.

status." Order, 4/25/2017, at 1. It also determined that Appellant knew or should have known what the conditions were because his probation officer reviewed the conditions with him in January 2017, prior to Appellant's commissions of the violations. *Id.*; *see also* N.T., 4/19/2017, at 14. The trial court revoked Appellant's probation on the IDSI conviction and continued the matter for sentencing. The trial court noted that in making its determination it did not consider the December 28, 2016 order imposing various probation conditions because there was no indication that Appellant was ever served with or otherwise received notice of that order.[8]

On July 6, 2017, Appellant was sentenced to three to ten years of incarceration, to be followed by a period of special probation of ten years. Appellant, through his counsel, timely filed a notice of appeal from his

---

[8] According to Appellant's counsel from the Public Defenders' Office who represented him at the *Gagnon II* hearing, the origin of the December 16, 2016 order was that Appellant had

> maxed off of state parole in November of [2016] … then went on to special probation … through the [s]tate[,] and at the onset of that special probation period there were no special conditions that mirrored the conditions he had signed for state parole prohibiting him from the viewing of obscene materials. [Appellant's] probation officer then petitioned in December of [2016] for the special conditions to be instated on [Appellant's] special probation.

N.T., 4/19/2017, at 2-3. Appellant denied receiving the order, and the Public Defenders' Office, which had represented Appellant in connection with his guilty plea and sentencing in 2002, had no record of sending the order to Appellant. *Id.* at 3-11. The docket does not indicate the filing of a written petition by Appellant's probation officer.

judgment of sentence. However, on February 12, 2018, this Court dismissed his appeal after his counsel failed to file a brief. Appellant timely filed *pro se* a petition for relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, which sought, *inter alia*, to reinstate his direct appeal rights based upon counsel's failure to file a brief. Tricia Hoover Jasper, Esquire was appointed as new counsel, the petition was amended, and on January 8, 2019, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*. This appeal timely followed.

In lieu of a concise statement pursuant to Pa.R.A.P. 1925(b), counsel filed a statement of intent to file an **Anders** brief pursuant to Pa.R.A.P. 1925(c)(4). Instead of filing an opinion pursuant to Pa.R.A.P. 1925(a), the trial court indicated that it would be relying upon the trial court's Rule 1925(a) opinion that was filed on September 25, 2017, before this Court dismissed Appellant's appeal of his judgment of sentence stemming from his probation violation.

On March 27, 2019, Appellant's counsel filed with this Court an **Anders** brief and a petition to withdraw as counsel. On September 24, 2019, due to deficiencies in counsel's **Anders** brief and missing items from the certified trial court record, we denied the petition and remanded to allow counsel to arrange for supplementation of the certified record and to file either an advocate's brief or a proper **Anders** brief and petition to withdraw. Counsel arranged for supplementation of the record, and counsel's second

***Anders*** brief and petition to withdraw, filed on November 26, 2019, are now

before us.  Before we may consider the substance of this appeal, we must

address counsel's compliance with ***Anders***.

> Direct appeal counsel seeking to withdraw under ***Anders*** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous.  Counsel must also file an ***Anders*** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof….
>
> ***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of ***Anders***, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with ***Anders*** or file an advocate's brief on Appellant's behalf).  By contrast, if counsel's petition and brief satisfy ***Anders***, we will then undertake our own review of the appeal to determine if it is wholly frivolous.  If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

***Commonwealth v. Wrecks***, 931 A.2d 717, 720-21 (Pa. Super. 2007)

(citations omitted).  Our Supreme Court has clarified portions of the ***Anders***

procedure:

> [I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must:  (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel

should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009) (emphasis added).

Based upon our examination of counsel's petition to withdraw and ***Anders*** brief, we conclude that counsel has substantially complied with the above requirements. Appellant has filed *pro se* a response to counsel's ***Anders*** brief. Generally, when counsel files an ***Anders*** brief, this Court must conduct "a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). However, because Appellant filed a *pro se* response to the ***Anders*** brief, our independent review is limited to those issues raised in the ***Anders*** brief. ***Commonwealth v. Bennett***, 124 A.3d 327, 333 (Pa. Super. 2015). We then review the subsequent *pro se* response in the same manner as an advocate's brief, and consider the merits of the issues presented *pro se* and rule upon them accordingly. ***Id.*** at 333-34.

Counsel identifies the issue of arguable merit as "whether the court erred in finding Appellant violated his consecutive probation when the violations involved violations of the special conditions of his now expired parole sentence." ***Anders*** Brief at 6 (capitalization altered). Specifically,

counsel notes that Appellant signed conditions, but claims the conditions related to his parole, not his probation. *Id.* at 10-16. Counsel further explains that Appellant argues that the trial court erred in finding a violation, because the conditions upon which his violation was based were set by the Board, and never imposed by the trial court. *Id.*

By counsel's assessment, there is no merit to Appellant's claim because Appellant signed Standard Special Conditions for Sex Offenders and Optional Special Conditions for Sex Offenders in May 2016. Counsel emphasizes that Appellant's probation officer explained to Appellant in January 2017, and other occasions, that Appellant had to follow these special conditions. According to counsel, while the trial court imposed these special conditions upon Appellant in its December 15, 2016 order, the trial court was correct in not considering this order because there is no proof that Appellant was ever aware of the order. Nevertheless, in counsel's view, the order is not relevant to this appeal because the Board may impose conditions upon probationers "that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court." *Id.* at 16 (citing *Commonwealth v. Elliott*, 50 A.3d 1284, 1292 (Pa. 2012)). Because the Board imposed conditions upon Appellant, Appellant was aware of those conditions as evidenced by his signature, and Appellant admitted to committing the acts at issue, counsel concludes that there is no merit to Appellant's claim of error.

- 11 -

Appellant, on the other hand, insists that counsel's evaluation of this issue misses the mark. Appellant contends that the only court order imposing conditions of probation in his case is the October 29, 2002 sentencing order. *Pro se* Response at 6. He emphasizes that while a December 15, 2016 order imposing conditions of probation exists, the trial court expressly did not consider the order while revoking his probation because there is no evidence that Appellant had received the order "and nobody 'fully explained why or how the order came about.'" ***Id.*** (citing Trial Court Opinion, 9/25/2017, at 2 n.1 and N.T., 4/19/2017, at 11). Appellant claims that the conditions he signed in May 2016 were conditions applicable to his parole, not his probation, because the conditions listed his parole number. ***Id.*** at 7. Furthermore, he argues that because the conditions at issue were imposed by the Board, and were not ordered by the trial court in the 2002 court order, the trial court erred by finding he violated his probation. ***Id.*** at 10-11 (citing ***Commonwealth v. Vilsaint***, 893 A.2d 753 (Pa. Super. 2006) and ***Commonwealth v. MacGregor***, 912 A.2d 315 (Pa. Super. 2006)).

In assessing Appellant's claim, we observe that "in an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." ***Commonwealth v. Wright***, 116 A.3d 133, 136 (Pa.

Super. 2015) (citation omitted). Further, "[r]evocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." *Commonwealth v. Colon*, 102 A.3d 1033, 1041 (Pa. Super. 2014).

As described *supra*, Appellant signed documents with conditions imposed by the Board three times: (1) Conditions Governing Special Probation/Parole in February 2010; (2) Optional Special Conditions for Sex Offenders in May 2016; and (3) Standard Special Conditions for Sex Offenders in May 2016. The Board oversees both probation and parole. The documents are preprinted forms that refer generically to "probation/parole" without being specifically customized to Appellant's case. The documents list Appellant's parole number. The 2010 conditions were not signed by a representative of the Board at all, but the 2016 conditions were signed by Misquitta John, who is designated on the forms as a parole agent. The record is not clear as to when Appellant began his parole and probation sentences or the context in which Appellant signed the conditions. Therefore, based on the record before us, we cannot agree with counsel that Appellant's claim that the conditions were applicable only to Appellant's parole and not his probation is so clearly devoid of merit to warrant classifying this claim as frivolous. *See MacGregor*, 912 A.2d at 318 (holding the trial court erred by revoking MacGregor's **probation** based

upon conditions that "were recited on a preprinted form applicable to parole, and were drafted by, and signed by a parole agent as the issuing authority," and which stated the conditions were being imposed as part of MacGregor's parole).

Appellant's next argument is that the conditions were imposed only by the Board and not the trial court. As both counsel and Appellant recognize, the trial court explicitly disregarded the December 2016 order imposing "the conditions governing probation and parole, the standard special conditions for sex offenders, and any supplemental standard special conditions of supervision." Order, 12/28/2016, at 1. Based upon our review of the certified record, Appellant is correct that the only other court order in the record imposing any conditions of probation is the October 29, 2002 sentencing order. The order specifies that the Board shall supervise him for 20 years, and the sole condition mentioned is payment of costs, fines, and restitution. Order, 10/29/2002, at 1-2.

In **MacGregor**, the case upon which Appellant principally relies, MacGregor signed conditions purportedly related to his probation, despite being listed on a pre-printed form entitled "Special Conditions of Parole." 912 A.2d at 316. One of the conditions listed on the form was avoiding contact with anyone under age 18. **Id.** After MacGregor thrice attended gatherings with young children present, the trial court revoked his probation and imposed a prison sentence. **Id.** at 317.

- 14 -

On appeal, this Court vacated the judgment of sentence on the basis that the condition MacGregor violated was never imposed by the trial court. In doing so, we relied on *Vilsaint*, 893 A.2d at 757, which held that, "the legislature [in the Sentencing Code] has specifically empowered the court, **not the probation offices and not any individual probation officers**, to impose the terms of probation." *MacGregor*, 912 A.2d at 317 (emphasis supplied in *MacGregor*).

Subsequently, in *Elliott*, our Supreme Court examined this issue further. The Court sought to reconcile a section of the Sentencing Code, 42 Pa.C.S. § 9754, with two sections of the Prisons and Parole Code, 61 Pa.C.S. §§ 6131(a)(5)(ii) & 6151. As recounted by the Court,

> Section 9754 of the Sentencing Code … provides in relevant part:
>
> > (a) General rule.—In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision.
> >
> > (b) Conditions generally.—The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life.
>
> 42 Pa.C.S. § 9754(a) & (b).
>
> Subsection (c) delineates fourteen conditions a sentencing court may impose upon a defendant in the imposition of probation. Among these, courts may direct defendants on

probation to attend treatment and addiction programs, pay fines and restitution, and refrain from frequenting "unlawful or disreputable places." *Id.* § 9754(c)(12), (8), (11), and (6), respectively. Further, subsection (c)(13) provides a "catch-all" for trial courts, allowing them to order defendants "[t]o satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." *Id.* § 9754(c)(13).

*Elliott*, 50 A.3d at 1288. After examining section 9754, the Supreme Court concluded that section 9754 permits trial courts to impose "conditions of probation." *Id.* at 1291.

Nonetheless, the Court noted that it could not ignore sections 6131 and 6151 of the Prisons and Parole Code, which mandate that the Board and its agents establish uniform standards for the supervision of probationers under its authority, and further to implement those standards and conditions. *Id.* The Court in *Elliott* reconciled the statutes by distinguishing between "conditions of probation," which are imposed by the trial court, and "conditions of supervision," which are imposed by the Board and its agents. *Id.* at 1291-92. It concluded that that "the Board and its agents may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court." *Id.* at 1292.

In *Elliott*, at the conclusion of Elliott's sentencing hearing, the trial court imposed as a condition of his probation that he not have unsupervised contact with any minor child. *Id.* at 1285. After serving his maximum sentence, Elliott was released and began serving his five-year probationary

term. *Id.* at 1285-86. Elliott was given a form created by the Pennsylvania Board entitled "Standard Special Conditions for Sex Offenders–Minor Victims," which included a condition that he not enter or loiter within 1,000 feet of areas where minors commonly congregate, including playgrounds, youth recreation centers, and elementary schools. *Id.* at 1286.

Elliott's probation officer observed him sitting near a large water fountain in a park where young children were playing, closely observing a young girl in a red bathing suit. *Id.* Elliott subsequently admitted to going to the park regularly to watch children and being sexually aroused by the girl in the red bathing suit. *Id.* at 1287. Elliott's probation was revoked and he was sentenced to two consecutive terms of two and a half to five years of incarceration. *Id.* The trial court found, *inter alia*, that he had violated supervision condition 19, that he avoid areas where persons under age 18 commonly congregate, such as the park fountain. *Id.*

On appeal, this Court reversed, finding that supervision condition 19 (no loitering within 1,000 feet) was not incorporated into the trial court's general no-contact requirement of Elliott's probation. *Id.* at 1288. Citing *Vilsaint* and *MacGregor*, this Court held that only the court, and not probation officers, can impose terms and conditions of probation.

The Commonwealth appealed, and our Supreme Court vacated this Court's order, holding that the Board merely expounded upon the trial court's no-contact order:

- 17 -

> [W]e find that [s]upervision [c]ondition 19, that [Elliott] should not 'enter or loiter within 1,000 feet of areas where the primary activity at such locations involve persons under the age of 18,' is a permissible condition of supervision imposed by the Board and is derivative of the trial court's condition of probation that Elliott not have unsupervised contact with minors.

*Id.* at 1292. The Court in ***Elliott*** distinguished ***MacGregor*** because, in that case, the trial court had ordered a $25 probation administration fee as the sole condition of probation, without actually setting forth any terms and conditions of probation. *Id.* at 1292 n.4. Thus, the condition of supervision imposed in ***MacGregor*** was not derivative of the condition of probation imposed by the trial court, and therefore, the Board did not have authority to impose the condition. *Id.* The matter was remanded to this Court for a determination as to whether the evidence was in fact sufficient to sustain the defendant's probation revocation based upon supervision condition 19. *Id.* at 1293.

In the instant case, counsel insists that ***Elliott*** is dispositive of Appellant's issue. We are not convinced. ***Elliott*** does not stand for the general proposition that the Board may set conditions of supervision that a probationer must follow or face revocation of probation. Instead, based upon its reconciliation of the Sentencing Code and the Prisons and Parole Code, ***Elliott*** demands that there be underlying conditions of probation set by a trial court, which then may be expanded upon to some extent by the Board.

As Appellant correctly recognizes, outside of the disregarded December 2016 order, the only condition of probation set by the trial court appears to be the condition to pay costs, fines, and restitution in the 2002 sentencing order. Arguably, the conditions of supervision imposed by the Board are not germane to this condition of probation set by the trial court. Therefore, Appellant's claim that his violations of the conditions of supervision imposed by the Board were insufficient to revoke his probation is not so clearly devoid of merit to warrant classifying this appeal as frivolous.[9] From our review, it appears that counsel is able to put forward good-faith arguments that the trial court erred by revoking his probation based upon his violations of the conditions of supervision.

Accordingly, we deny counsel's petition for leave to withdraw and direct counsel to file an advocate's brief within 60 days. The Commonwealth may file a brief in response 30 days thereafter.

_____

[9] Appellant also raises a second related issue in his *pro se* **Anders** response. He contends that the revocation of his probation for violating conditions of his probation that were never court ordered violated his due process rights under the United States and Pennsylvania constitutions, because it deprived him of his "liberty to be free from probation [] violations." *Pro se* Response at 12. As framed by Appellant, this issue has no merit. "[D]ue process does not afford relief absent a protected liberty interest." **Commonwealth v. Turner**, 80 A.3d 754, 767 (Pa. 2013). There is no protected liberty interest to be free from probation violations when one is serving a sentence of probation.

Petition to withdraw denied. Counsel directed to file an advocate's brief within 60 days. Appellant's applications within his *pro se* response for appointment of new counsel and publication denied. Jurisdiction retained.